IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HERMAN DAVID EVINS                                                    PLAINTIFF

v.                                   Civil No. 4:18-cv-4095

CAPTAIN ADAMS, Miller County
Detention Center ("MCDC"); MRS.
WATSON, MCDC; and CORRECTION
OFFICER BROWN, MCDC                                      DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action brought by *pro* se Plaintiff, Herman David Evins, under 42 U.S.C. § 1983. Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 29). Plaintiff has filed a response.[1] (ECF No. 39). The Court finds this matter ripe for consideration.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") Delta Regional Unit. His claims in this action arise from an alleged incident that occurred on April 16, 2018, and the disciplinary process that followed while he was incarcerated in the Miller County Detention Center ("MCDC"). (ECF No. 1, p. 3). Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was booked into MCDC custody on January 26, 2018. (ECF No. 31-2, p. 2). On February 26, 2018, Plaintiff's probation was revoked, and he was scheduled for transfer to the ADC. (ECF No. 1, p. 3).

On April 16, 2018, Defendant Brown reported an incident stating:

---

[1] Plaintiff's response is not verified, but he submitted a verified complaint. (ECF No. 1). A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994-95 (8th Cir. 2001).

1

> While serving chow to Max Bravo inmate Evins Herman walked up to receive his trey during chow inmate Evins began being disrespectful stating 'the portions are not big enough and the trey was to small' also stated 'I do not want that trey' I Officer Brown said 'ok' and shut the door to Max Bravo inmate Evins walked back up to the Max Bravo door and struck the glass with a closed fist. I officer Brown removed inmate Evins form Max Bravo and placed him in Hand Restraints while he was cursing me. I Officer Brown then escorted Inmate Evins to Max Alpha cell 806 while he continued to curse me. I then secured him in Max Alpha cell 806 without further incident pending disciplinary.

(ECF No. 31-5, p. 3). On April 17, 2018, Plaintiff responded to Officer Brown's report stating, "There was a misunderstand w/officer over refusal of a trey. I did not refuse and the officer wouldn't listen." (ECF No. 31-5, p. 4).

On April 24, 2018, the Miller County disciplinary committee found Plaintiff guilty by admission of refusing the food tray and disrespecting an officer with inappropriate language. The sanction for these violations was thirty days in segregation. The committee found:

> After hearing this inmate's statement, Cpt. Adams explained that by him walking away from the tray that was offered to him and he didn't take it, that was in fact refusing the tray. And that by cussing at the officer that was being disrespectful. Therefore this inmate is found GUILTY by his own admission. Sanction is for 30 days.

(ECF No. 31-5, pp. 5-7).

On May 8, 2018, Plaintiff submitted a grievance stating:

> [A]pril 16, 2018 I was not given a tray. On [t]he grounds that I refused to take a tray they handed me, Yet I as at the door when they closed it on me trying to get a tray. When I argued with officer Brown, He cuffed me and put me in the hole with no tray. I went to disiplenary court and there again he focus was more on me argueing with Brown over not getting a tray than me not getting one. Thanks for your time and consideration.

(ECF No. 31-3, p. 28). In response, Administrator G. Officer stated, "The Disciplinary committee will review our request. We will consider your request upon completion of that review. We will take into consideration the nature of our misconduct when determining whether a reduction is

warranted." In addition, Defendant Adams also responded stating, "You were in line to get a tray and you didn't like the one offered to you and walked away. That is refusing. We covered this in disciplinary court." *Id.*

It is the written policy of the MCDC that proper order be maintained in the facility and that approved disciplinary procedures be followed when inmates attempt to disrupt order and security. (ECF No. 31-6, p. 1). The purpose of this policy is to establish guidelines for acceptable behavior and a system of prohibitions, penalties, and correctional measures that deal with conduct that causes or threatens to cause harm to self, others, property, or is disruptive of institutional operations. *Id.*

The MCDC maintains a list of prohibited acts, their corresponding disciplinary actions, and the method of establishment and loss of inmate privileges. A list of inmate rules, regulations and sanctions is posted in each housing area. (ECF No. 31-6, p. 9). Under the rules and sanctions list, disrespect of officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like is a rule violation under Section 1. The maximum disciplinary sanction is thirty days. *Id.* at p. 11.

The MCDC also has established procedures which are followed in the event an inmate is accused of violating the facility's rules. (ECF No. 31-6, pp. 3-8). The procedures include the completion of a disciplinary report by the charging officer, an investigation—which includes witness statements, the charging officer's account of the incident, and the accused inmate's account of the incident, and a review and decision by a disciplinary committee. The accused inmate is given a written statement of the charge and twenty-four hours advance notice of the disciplinary hearing. The accused inmate is present at the disciplinary hearing unless documented security issues require his/her exclusion. *Id.*

It is also the policy of the MCDC to provide inmates with three nutritious meals per day that are developed by a certified dietician, prepared under sanitary conditions, at a reasonable cost, and in such a manner that meets established government health and safety codes. (ECF No. 31-6, p. 31). According to the MCDC's Inmate Handbook, meals are regulated as follows:

> All meals will be served in the day room in the cells when appropriate. Each inmate is entitled to one tray only. Each inmate is responsible for getting up and receiving their own food tr[a]y. You may not allow another inmate to get a tray for you. Food trays will be returned immediately after consuming the meal. No food trays are to be kept in the housing area. All menus are reviewed by the Miller County Sheriff's Office/Detention Division's registered dietician to ensure the meals meet the recommended daily dietary allowances of up to 2700 calories a day. Three meals will be served each day.

(ECF No. 31-6, p. 18).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his complaint on June 12, 2018. (ECF No. 1). Plaintiff alleges Defendants Brown, Adams, and Watson neglected their duties and abused their authority. Plaintiff claims that on April 16, 2018, he "was not given a tray of food at dinner [by Brown]. I did not get to eat dinner. Making me fearful that upsetting a guard might cause me to go hungry. Giving false statements. I was also handcuffed and taken to a lockdown cell. For argueing with officer [Brown] about not getting my tray." *Id.* at pp. 4-5. Plaintiff also claims:

> After proving Officer Brown made some false allegations…in disiplenary court… defendants Cpt. Adams and Mrs. Watson stayed focused on my argueing with Brown about not getting my tray, instead of me not getting my tray. Because I argued with Officer Brown about not getting my tray, I was sentenced to 30 days lockdown. I thought Adams and Watson were suppose to help protect my right to eat.

*Id.* at pp. 6-7.

Plaintiff is suing Defendants in their individual capacity only. He seeks compensatory and punitive damages and asks for, "the dismissal of officers involved so they can't intimidate any

more of the inmates." *Id.* at p. 9.

On March 14, 2019, Defendants filed the instant Motion for Summary Judgment arguing they are entitled to summary judgment because: (1) there is no constitutional injury caused by a missed meal; (2) Plaintiff was provided due process of law; and (3) Defendants are entitled to qualified immunity. (ECF No. 29).

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV. DISCUSSION

### A. Missed Meal

Plaintiff alleges that Defendant Brown neglected his duty and abused his authority when he refused to give Plaintiff a tray of food at dinner on April 16, 2018. The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. This prohibition is violated if an inmate is not provided with meals adequate to maintain his health. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (holding that prisoners have a right to nutritionally adequate food); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980) (holding that prisoners are guaranteed a reasonably adequate diet). To prevail on an Eighth Amendment claim, Plaintiff must show that Defendant Brown was deliberately indifferent to his dietary needs. *Wishon*, 978 F.2d at 449.

The law is clear that one missed meal does not rise to the level of an Eighth Amendment violation. *See Williams v. Harness*, No. 99-1326, 2000 WL 573448, at *1 (8th Cir. May 10, 2000) (unpublished per curiam) (holding that denial of one meal does not give rise to a constitutional violation); *Jaros v. Ill. Dept. of Correction*, 684 F.3d 667 (7th Cir. 2012) (stating that occasional missed meal that did not endanger the inmate did not state a claim); *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (finding that when an inmate misses one meal it does not rise to the level of a cognizable constitutional injury). Accordingly, Defendant Brown is entitled to summary judgment on this claim.

### B. Due Process

Plaintiff claims that Defendants Adams and Watson neglected their duties and abused their authority during his disciplinary hearing when they sentenced him to thirty days in lockdown for

refusing his food tray. Plaintiff also claims that the accusations made against him by Defendant Brown, which resulted in the lockdown and disciplinary hearing, were false. The Court construes these allegations as claims based on denial of due process.

In order to prevail on a due process claim, Plaintiff must first demonstrate that he was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). As noted by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472, 485 (1995), although "prisoners do not shed all constitutional rights at the prison gate, lawful incarceration brings about the necessary limitation of many privileges and rights justified by the consideration underlying our penal system." Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. *Id.* "To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin*, 515 U.S. at 484).

The record reflects that Plaintiff was placed in lockdown in the Max Alpha area of the MCDC on April 16, 2018, after Plaintiff hit a window with his fist and began using disrespectful language towards Defendant Brown. Plaintiff remained in lockdown for thirty days and then returned to the general population. Plaintiff has not described any conditions of his confinement during the time he was in lockdown to demonstrate he was subjected to a dramatic departure from the basic conditions of his confinement. Moreover, simply being placed in disciplinary segregation is not an "atypical and significant hardship…in relation to the ordinary incidents of prison life" and thus, is not the type of deprivation that creates a protected liberty interest. *See Phillips*, 320

F.3d at 847 ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship.").

The Eighth Circuit has also held that much longer periods in segregation than that experienced by Plaintiff, with loss of privileges, does not implicate a liberty interest triggering due process protections. *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (finding that inmate was not deprived of liberty interest during nine months in administrative segregation); *Rahman X*, 300 F.3d at 974 (finding inmate's placement in administrative segregation for twenty-six months without a disciplinary charge or conviction and during which inmate could not watch television in his cell did not "demonstrate that his liberty interest was curtailed"); *Furlough v. Brandon*, 2009 WL 4898418 (E.D. Ark. Dec. 15, 2009) (holding that plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months).

Even if Plaintiff's placement in punitive segregation for thirty days at the MCDC infringed upon Plaintiff's liberty interests, the Court finds that Plaintiff was provided procedural due process in connection with his disciplinary confinement. Once an inmate has shown he has a viable liberty interest, correctional facilities must follow certain procedures to conduct an impartial due process hearing on a disciplinary matter. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

In this case, Plaintiff was given sufficient notice of the disciplinary charges against him and adequate notice of the upcoming hearing. Plaintiff not only attended the hearing but presented a statement in support of his position. Finally, Plaintiff's claim that Defendant Brown filed "false" charges against him fails to state a constitutional claim. *See Daniels v. Ferguson*, 2008 WL

698485, *9 (W.D. Ark. March 13, 2008) ("To the extent [Plaintiff] contends his Due Process rights were violated because the disciplinary charges were fabricated or the events simply never occurred, courts have held that a prisoner enjoys no constitutional guarantee to be free from false charges that may lead to punishment.") (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986) and *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983). Accordingly, Defendants are entitled to summary judgment on Plaintiff's due process claims.[2]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 29) is hereby **GRANTED.** Plaintiff's claims against Defendants Captain Adams, Mrs. Watson, and Officer Brown are **DISMISSED WITH PREJUDICE.** A judgment of even date shall issue.

**IT IS SO ORDERED,** this 7th day of June 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[2] Because there was no violation of Plaintiff's constitutional rights, it is unnecessary for the Court to address the issue of qualified immunity.